IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROMAN GARCIA, Individually and as
Representative of the Estate of
Celia Saenz Tangonan, et al.,

           Plaintiffs,

      v.                                     No. 2:25-cv-00645-KG-GJF

EVANGELICAL LUTHERAN GOOD
SAMARITAN SOCIETY,

           Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on the motion to compel arbitration and stay this case filed by Defendant the Evangelical Lutheran Good Samaritan Society.  Doc. 8.  For the reasons below, the motion is granted, and this case is stayed pending the conclusion of arbitration.

### I.    *Background*

Celia Saenz Tangonan died in June 2023 at age 94 while in the care of Defendant—a nursing home in Las Cruces, New Mexico—allegedly because of Defendant's negligent care.  *See* Doc. 1 at 14–19.  Before her death, the decedent gave healthcare decision-making authority to her daughter, Plaintiff Elisa Vera, who signed an arbitration agreement with Defendant on her mother's behalf in April 2023.  *See* Doc. 8 at 22–24.

The arbitration agreement is broad in scope.  The parties agreed, for example, that "[a]ny legal controversy, dispute, disagreement or claim arising between the Parties hereto after the execution of this [agreement] in which Resident, or a person acting on…her behalf, alleges a violation of any right granted Resident under law or contract shall be settled exclusively by binding arbitration as set forth in [this agreement]."  *Id.* at 22.  The parties similarly agreed that:

Any legal controversy, dispute, disagreement or claim of any kind arising out of or related to this [agreement]…or, related to the care of stay at the Facility, shall be settled exclusively by binding arbitration as set forth in [this agreement].  This arbitration clause is meant to apply to all controversies, disputes, disagreements or claims including, but not limited to…all negligence and malpractice claims…[and] all tort claims….  This arbitration provision binds all parties whose claims may arise out of or relate to treatment or service provided by the center including any spouse or heirs of the Resident.  *Id.*

The parties also agreed that the arbitrator decides threshold issues of arbitrability.  The agreement states that the "issue of whether a Party's claim(s) is subject to arbitration under this [agreement] shall be decided by the arbitrator," and the parties "expressly agree that the Arbitrator shall have exclusive authority to resolve any disputes related to the existence and/or enforceability" of the arbitration agreement, "including but not limited to any claim that all or any part" of the arbitration agreement "is void or voidable." *Id.* at 22–23.

Plaintiffs, the decedent's children, filed this lawsuit against Defendant in June 2025, alleging negligence and wrongful death.  *Id.*  In July 2025, Defendant filed the present motion to compel arbitration, arguing that the arbitrator must decide issues concerning the arbitration agreement's existence and enforceability.  Docs. 8–9.  Plaintiffs oppose the motion, arguing, for example, that Defendant failed to authenticate certain evidence and that the arbitration agreement is unconscionable under New Mexico law.  Doc. 16.  Plaintiffs separately filed evidentiary "objections" to materials attached to Defendant's motion.[1]  Doc. 15.

## II.    *Standard of Review*

Under the Federal Arbitration Act ("FAA"), a "written provision in…a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter

---

[1] A party opposing a motion in this Court may file only one "response" to the motion, and the response "must not exceed twenty-four (24) double-spaced pages."  D.N.M.LR-Civ. 7.1(b), 7.3(a), 7.5.  Plaintiffs, however, filed a 20-page response to Defendant's motion, Doc. 16, along with separately filed evidentiary "objections" that are five pages long.  Doc. 15.  Plaintiffs' separate filings violate this Court's local rules.  The Court will consider Plaintiffs' "objections" in this case, but the parties are reminded to follow the local rules for all future filings.

arising out of such contract…shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[2] "Under the Act, arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales*, 586 U.S. 63, 67 (2019).

"[P]arties may agree to have an arbitrator decide not only the merits of a particular dispute but also gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* at 67–68 (quotation marks omitted). That is because an "agreement to arbitrate a gateway issue is simply an additional, antecedent agreement [that] the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 68. There must be "clear and unmistakable evidence" that the parties "delegated arbitrability issues to the arbitrator," and if that requirement is satisfied, courts have "no power to decide the arbitrability issue." *Brayman v. KeyPoint Gov't Sols., Inc.*, 83 F.4th 823, 832 (10th Cir. 2023) (quoting *Henry Schein*, 586 U.S. at 68).

"In a case involving a delegation clause, a challenge to the arbitration agreement as a whole is insufficient[;] the party seeking to avoid arbitration must specifically challenge the delegation clause." *Palczynsky v. Oil Patch Grp., Inc.*, 2024 WL 3858911, at *5 (D.N.M.) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). Otherwise, the court "must treat the delegation clause as valid and enforce it under the FAA, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.* (quoting *Rent-A-Ctr.*, 561 U.S. at 72); *see also Dreamstyle Remodeling, Inc. v. Renewal by Andersen, LLC*, 2020 WL 2065276, at

---

[2] The parties expressly agreed in the arbitration agreement that the FAA governs this case, *see* Doc. 8 at 23 ¶ D, and Plaintiffs do not dispute Defendant's contention that the FAA applies here. *Compare* Doc. 9 at 3–4 *with* Doc. 16.

*4 (D.N.M.) ("As explained by the Supreme Court in *Rent-A-Center*, if a plaintiff fails to raise a specific challenge to the delegation provision, the court must enforce the provision.").

### III.    Analysis

The Court concludes that there is clear and unmistakable evidence that the parties delegated the question of arbitrability to the arbitrator in this case. *See Henry Schein*, 586 U.S. at 68. Plaintiff Vera signed an arbitration agreement on her mother's behalf broadly stating that the "issue of whether a Party's claim(s) is subject to arbitration under this [agreement] *shall be decided by the arbitrator*," who "shall have *exclusive authority* to resolve *any disputes related to the existence and/or enforceability*" of the arbitration agreement, "including but not limited to any claim that all or any part" of the arbitration agreement "is void or voidable." Doc. 8 at 22–23 (emphasis added). The Tenth Circuit has enforced delegation provisions with similar language. *See Brayman*, 83 F.4th at 829–30 (arbitrator had "exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation" of arbitration agreement; *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1281 (10th Cir. 2017) ("arbitrability disputes" about "formation, existence, validity, interpretation or scope…shall be submitted [to] and ruled on by the Arbitrator"). Personal representatives in wrongful death cases are bound by the decedent's arbitration agreements under New Mexico law. *E.g.*, *Est. of Krahmer v. Laurel Healthcare Providers, LLC*, 2014-NMCA-001, ¶ 16, 315 P.3d 298. The Court therefore enforces the delegation provisions in the parties' agreement and leaves the threshold question of arbitrability for the arbitrator to resolve. *See Henry Schein*, 586 U.S. at 68.

Plaintiffs challenge the arbitration agreement, but Plaintiffs' arguments do not persuade the Court. First, Plaintiffs argue that the delegation provisions are invalid because the arbitration agreement "does not incorporate any arbitration rules allowing an arbitrator to decide gateway

questions of arbitrability." Doc. 16 at 11–14. This argument lacks merit. Incorporating standardized arbitration rules into an agreement, such as rules created by the American Arbitration Association or JAMS, is one way to delegate gateway questions of arbitrability to the arbitrator, but it is not a requirement for a valid delegation. *E.g.*, *Brayman*, 83 F.4th at 832–36 (enforcing delegation provision that did not incorporate standardized arbitration rules).

Second, Plaintiffs contend that the Court cannot enforce the arbitration agreement because Defendant did not authenticate it and because it is hearsay under the Federal Rules of Evidence. *See* Doc. 16 at 5; Doc. 15. The Court rejects these arguments. Responding to Plaintiffs' evidentiary objections, Defendant authenticated the agreement in its entirety through the affidavit of Lori Mondragon, Defendant's former Social Services Director, thus rendering Plaintiffs' authentication objections moot. Doc. 18-1 ¶¶ 7–8; *see, e.g.*, *BigBen 1613, LLC v. Belcaro Grp., Inc.*, 2018 WL 4257321, at *2 (D. Colo.) (allowing movant to authenticate arbitration agreement through declaration attached to reply). Likewise, the signed arbitration agreement is not hearsay because it is "an act of legal significance between" Plaintiffs and Defendant and "not a 'statement' offered for its truth." *Cagle v. James St. Grp.*, 400 Fed. Appx 348, 356 (10th Cir. 2010).

Last, Plaintiffs argue that the arbitration agreement as a whole is unenforceable because it is unconscionable. Doc. 16 at 15–19. The parties, however, expressly agreed that the arbitrator has "exclusive authority" to decide the arbitration agreement's "enforceability." Doc. 8 at 22–23 (emphasis added). The Court therefore enforces the plain language of the arbitration agreement and leaves Plaintiffs' unconscionability arguments for the arbitrator to resolve in the first instance. *E.g.*, *Rent-A-Ctr.*, 561 U.S. at 72–76 (sending unconscionability argument to arbitration where parties delegated arbitrability question to arbitrator).

**IV.    *Conclusion***

Defendant's motion to compel arbitration (Doc. 8) is GRANTED, and this case is

STAYED pending the arbitration's conclusion. *See* 9 U.S.C. § 3 (courts "shall…stay the trial of

the action until such arbitration has been had in accordance with the terms of the agreement").

The parties shall file a status report six months from the date of this order if a resolution

has not been reached.

IT IS SO ORDERED.

/s/Kenneth J. Gonzales_____
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.